IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| CHERYL BALL, *individually and on behalf of the* ESTATE OF JAMES MICHAEL BALL, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) No. 2:16-cv-00041-DCN |
| vs. | )<br>) **ORDER** |
| USAA LIFE INSURANCE COMPANY, | )<br>) |
| Defendant. | )<br>)<br>) |

The following matters are before the court on defendant USAA Life Insurance Company's ("USAA") motion for a protective order, ECF No. 46, and plaintiff Cheryl Ball's ("plaintiff") motion to compel, ECF No. 49. For the reasons set forth below, the court grants USAA's motion for a protective order and denies plaintiff's motion to compel.

## I. BACKGROUND

Plaintiff alleges that her husband, James Michael Ball ("Ball"), served in the Army for 27 years prior to retiring from active duty. Compl. ¶ 4. Ball applied for life insurance with USAA on April 17, 2012 and obtained two life insurance policies on May 20, 2012. Id. ¶ 5. On December 13, 2013, Ball was killed in a hit and run motor vehicle accident, and the cause of death was listed as blunt force injuries to the head after being ejected from a motorcycle. Id. ¶ 6. After Ball's death, plaintiff submitted a claim for life insurance benefits. Id. ¶ 7. Plaintiff alleges that USAA denied her claim on November 24, 2014. Id. Plaintiff filed her complaint on October 27, 2015 in the Court of Common

1

Pleas for Dorchester County, bringing the following causes of action: (1) breach of contract; (2) insurance bad faith; and (3) attorney's fees pursuant to South Carolina Code § 38-59-40. USAA filed a notice of removal on January 7, 2016.

Throughout this litigation, plaintiff has attempted to discover certain statistical information regarding USAA's treatment of other policies. On May 16, 2016, the court granted in part plaintiff's motion to compel responses to interrogatories seeking:

> the total number of life insurance policies that were issued by USAA Life Insurance Company for the calendar years 2004 through 2014. . . . the total number of life insurance benefit claims that were filed with USAA Life Insurance Company for the calendar years 2004 through 2014. . . . the total number of claims for benefits made on policies that were within the first two years of the date of the policies' issue that were contested or denied by USAA. . . . [the total number of claims in the calendar years 2004–2014 that] USAA denied or contested, in whole or part, on the basis that an insured made a misrepresentation on their application with regard to PTSD, Depression or any other alleged disorder of the nervous system. . . . [and the total number of claims in the calendar years 2004–2014 that] USAA denied or contested, in whole or part, on the basis that an insured made a misrepresentation of their application with regard to receiving a prescription for an anti-depressant or suffering from an alleged mental illness.

ECF No. 24 at 3–4. The court granted plaintiff's motion to compel, but limited the temporal scope of the requests to the five years prior to the action, and limited certain requests to claims from South Carolina. Id. at 4.

Plaintiff eventually took the depositions of eleven USAA employees. Because plaintiff withdrew her initial 30(b)(6) notice, none of these witnesses were deposed in a 30(b)(6) capacity. Peter Morris ("Morris"), a principal underwriter who participated in the claims investigation for this case, testified about the total number of applications USAA processed every year—one of the subjects addressed by the interrogatories outlined above. Morris's answer was apparently inconsistent with the answer USAA provided in response to the interrogatory. ECF No. 47 at 2. USAA's underwriter,

Tamara Schmeling ("Schmeling") also provided deposition testimony that she reviews somewhere between 2,600 to 7,800 applications per year. Id. at 3.

Plaintiff has now renewed her efforts to discover statistical information regarding USAA's treatment of other claims. On February 2, 2017, plaintiff filed a second set of interrogatories, and on February 10, 2017, plaintiff filed a third set of interrogatories. Defendants have objected to the following requests from plaintiff's second set of interrogatories:

1. Provide the total amount of premiums revenue collected by USAA Life Insurance Company from 2009 to 2014.

2. Provide the total number of life insurance claims from 2009 to 2014 that were paid to an insured's family and/or beneficiary after having been denied within the two-year contestability period.

3. Provide the total number of life insurance policies issued by USAA Life Insurance from 2009 to 2014 where the accepted applicant (insured) has listed any of the following conditions on his or her application:

    a. Depression

    b. Sleep apnea

    c. PTSD (Post-Traumatic Stress Disorder)

    d. TBI (Traumatic Brain Injury)

ECF No. 49 at 2–4. Defendant has also objected to the following requests from plaintiff's third set of interrogatories:

1. Provide the total number of life insurance applications processed/received by the Defendant from 2009 to 2014.

2. Provide the total number of life insurance applications that were denied and/or not issued by Defendant from 2009 to 2014.

Id. at 4–5. On February 23, 2017, the plaintiff also served a second 30(b)(6) deposition notice on USAA seeking testimony on various "amounts" and "numbers" concerning

USAA's business and three different reports to USAA's members. ECF No. 46-2. The discovery deadline in this case was March 31, 2017.

USAA filed a motion for protective order with respect to plaintiff's second 30(b)(6) deposition notice on March 15, 2017. ECF No. 46. Plaintiff filed a response on March 21, 2017, ECF No. 47, and USAA filed a reply on March 22, 2017. ECF No. 48. Plaintiff filed a motion to compel responses to her second and third sets of interrogatories on March 24, 2017. ECF No. 49. USAA filed a response to the motion to compel on April 5, 2017, ECF No. 63, and plaintiff filed a reply on April 11, 2017. ECF No. 64. The motions are now ripe for the court's review.

## II.  STANDARD

Federal Rule of Civil Procedure 26 provides that, unless otherwise limited by court order, "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden of expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1) (note that the 2015 Amendments omit the phrase "reasonably calculated to lead to the discovery of admissible evidence"). Notably, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Id.

If a party declines to answer an interrogatory or request for production, the serving party "may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). "The scope and conduct of discovery are within

the sound discretion of the district court." Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568 n.16 (4th Cir. 1995) (citing Erdmann v. Preferred Research, Inc. of Georgia, 852 F.2d 788, 792 (4th Cir. 1988)).

### III. DISCUSSION

USAA's motion for a protective order and plaintiff's motion to compel both concern plaintiff's renewed efforts to discover information concerning USAA's general business operations.

### A. Motion to Compel

As set forth above, plaintiff's motion to compel asks the court to compel USAA to respond to the following interrogatories:

1. Provide the total amount of premiums revenue collected by USAA Life Insurance Company from 2009 to 2014.

2. Provide the total number of life insurance claims from 2009 to 2014 that were paid to an insured's family and/or beneficiary after having been denied within the two-year contestability period.

3. Provide the total number of life insurance policies issued by USAA Life Insurance from 2009 to 2014 where the accepted applicant (insured) has listed any of the following conditions on his or her application:

    a. Depression

    b. Sleep apnea

    c. PTSD

    d. TBI

1. Provide the total number of life insurance applications processed/received by the Defendant from 2009 to 2014.

2. Provide the total number of life insurance applications that were denied and/or not issued by Defendant from 2009 to 2014.

USAA argues that these requests are irrelevant and "not reasonably calculated to lead to the discovery of admissible evidence." ECF No. 63 at 1. Given the 2015 changes to Rule 26, the court assumes USAA means to argue that these requests are not "proportional to the needs of the case." Fed. R. Civ. P. 26.

1.  **Total Amount of Premiums Revenue**

Plaintiff contends that the "total amount of premiums collected by [USAA] from 2009 to 2014" is relevant to USAA's ability to pay punitive damages.[1] ECF No. 58 at 1–2. In Branham v. Ford Motor Co., the Supreme Court of South Carolina discussed the due process implications of utilizing measures other than a defendant's net worth as a metric for measuring the defendant's ability to pay. 701 S.E.2d 5, 25 (S.C. 2010) (noting that "[e]vidence concerning net worth appears the safest harbor," and concluding that the Supreme Court's "cautionary observation that 'reference to [the defendant's] assets . . . ha[s] little to do with the actual harm sustained by the [plaintiff]' militates against venturing beyond net worth and extrapolations from net worth" (quoting State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 427 (2003))). Plaintiff believes that her request is narrow in scope because it focuses on the value of life insurance contracts to USAA.

Plaintiff emphasizes that insurance contracts have "value to the defendant." This is unquestionably true. From an accounting perspective, they would even be considered "assets." Most likely, they are the primary assets—or at least source of assets—in

---

[1] The court has granted USAA summary judgment on the bad faith claim, ECF No. 93. Therefore, USAA's ability to pay punitive damages is no longer at issue.

USAA's business, given that USAA is a life insurance company. Thus, the court fails to see how plaintiff's request steers clear of the Supreme Court's "cautionary observation that 'reference to [the defendant's] assets . . . ha[s] little to do with the actual harm sustained by the [plaintiff],'" which so concerned the Branham court. Branham, 701 S.E.2d at 5 (quoting Campbell, 538 U.S. at 427). The fact that plaintiff's request focuses on a specific type of asset and requests specific revenues does not, as plaintiff claims, make the request "wholeheartedly different, if not borderline opposite, than gross revenue [or] cash flow." ECF No. 64 at 1. Plaintiff is still requesting a gross, rather than net, measurement.

Thus, the court finds that the request is not proportional to the needs of the case, as it would not serve any purpose in resolving the issues before the court.

### 2. Total Number of Life Insurance Claims Paid After Being Denied Within the Two-Year Contestability Period

Plaintiff contends that this request will "illustrate[]what the [p]laintiff believes to be the normal business practice of the defendant in which claims that arise within the two-year contestability period are oftentimes denied first and a lawsuit transpires after." Id. at 2. Certainly, if it were true that USAA engages in such a practice, the statistic plaintiff seeks would tend to reveal it. However, this does not seem to be especially valuable. The probative value of such evidence would be dependent on the merits of the other claims that received similar treatment from USAA. While the "reasonably calculated to lead to admissible evidence" language has been removed from Rule 26, the court must still consider the "importance of the discovery in resolving the issues."

The court finds that this information is not proportional to the case, simply because it is, at best, only conditionally relevant.

### 3. Total Number of Policies Issued by USAA Where the Applicant Listed Depression, Sleep Apnea, PTSD, or TBI.

Plaintiff argues that this information would tend to disprove USAA's assertion that it would not have issued the policy to Mr. Ball had he disclosed these conditions. ECF No. 64 at 3. USAA argues that it would have denied Ball's application based on the <u>combination</u> of these conditions, and thus, plaintiff's interrogatory would only be relevant if it sought information about policies that were issued to applicants who listed <u>all of these conditions</u>. ECF No. 63 at 2–3.

The court agrees with USAA's argument that issuing a policy to an applicant who discloses <u>one</u> condition says very little about whether it would have issued a policy to an applicant who discloses <u>multiple</u> conditions. Again, the court denies plaintiff's motion to compel a response to the interrogatory.

### 4. Total Number of Life Insurance Applications Processed/Received by the Defendant

Plaintiff argues that she needs this information to resolve discrepancies between contradictions in Morris and Schmeling's testimony. ECF No. 64 at 3–4. However, this information does not appear particularly significant. Plaintiff explains that she intends to show that "[t]he abundance of applications handled, allegedly, by each underwriter shows the amount of attention USAA gives to their applicants and to the application." Id. at 4–5. Because the total number of life insurance applications is relevant to show the general workload of USAA's underwriters, its relevance does not depend on the specific content of other claims or applications. This information does not have the same tendency to mislead or confuse and is more relevant than the information sought by the

interrogatories outlined above. Therefore, the court finds that this information is relevant and proportional.

### 5. Total Number of Life Insurance Applications that were Denied and/or Not Issued by Defendant from 2009 to 2014

This request is comparable to the request for the total number of applications processed, and therefore, the court finds that it is relevant and proportional.

### 6. Leave to Exceed

Another issue for the court to consider arises from the fact that plaintiff has already exceeded the limit on interrogatories imposed by Federal Rule of Civil Procedure 33.

The plaintiff's first set of interrogatories dated December 1, 2015, included 20 interrogatories, three of which included a total of nine subparts, a total of 26. The plaintiff's second set of interrogatories, dated February 2, 2017, included three interrogatories, one of which contained six subparts. The plaintiff's third set of interrogatories dated February 10, 2017, included two additional interrogatories. Thus, the plaintiff has served USAA with 36 interrogatories, including subparts, despite the fact that Rule 33(a)(1) limits parties to "no more than 25 interrogatories, including all discrete subparts."

Plaintiff has requested five additional discovery requests beyond Rule 33(a)(1) and as stated earlier in ECF 49, granting such leave will be appropriate if the interrogatories are 'consistent with Rule 26(b)(1) and (2).' In other words, to grant leave, the court must find that the proposed interrogatories seek information that is nonprivileged and relevant to a claim or defense, and that the interrogatories are 'proportional to the needs of the case.' Fed. R. Civ. P. 26(b)(1)." Holcombe v. Helena

Chem. Co., 2016 WL 2897942, at *1 (D.S.C. May 18, 2016). In addition, plaintiff contends leave to file for these five interrogatories is in the best interest of judicial economy. The court disagrees.

The plaintiff did not request leave from USAA or the court to exceed the limit proscribed by the rule. Rather, she appended a request for leave to page 8 of her motion to compel. This request is untimely and is denied. Additionally, because the interrogatories do not seek relevant information, the plaintiff's request for leave is denied. See Rule 33 (a)(1) (stating leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and (2)).

### B. Motion for Protective Order

Next, the court turns to USAA's motion for protective order concerning plaintiff's second rule 30(b)(6) deposition notice. USAA objects to the plaintiff's deposition notice for two reasons: (1) plaintiff has exceeded the number of depositions and interrogatories allowed under the Federal Rules and (2) the topics in the deposition notice are "far afield" from the issues in the case.

Since the action was filed on October 17, 2015, plaintiff has taken twelve depositions. ECF No. 46 at 2. Of these twelve depositions, eleven were of USAA employees. Under Rule 30, without leave of the court, a party may take only ten depositions. Furthermore, upon review of the 30(b)(6) deposition notice, it is apparent that the 30(b)(6) deposition functions as additional interrogatories. For example, plaintiff asks for USAA "annual life insurance premium revenue from 2010–2014" and "annual amount of life insurance policy proceeds paid out to claimants from 2010–2014." ECF No. 46, Ex. B Plaintiff's second rule 30(b)(6) deposition notice. These are identical to

the requests in plaintiff's second set of interrogatories. Additionally, the court has already found that the topics that these interrogatories address are not relevant to the case, as explained in Section III.A. Finally, as explained above in Section III.A.6, plaintiff has already exceeded the limit of interrogatories that she may serve. Therefore, the court grants USAA's motion for protective order.

## IV. CONCLUSION

For the foregoing reasons, the court **GRANTS** USAA's motion for a protective order and **DENIES** plaintiff's motion to compel.

**AND IT IS SO ORDERED.**

                              **DAVID C. NORTON**
                              **UNITED STATES DISTRICT JUDGE**

**September 25, 2017**
**Charleston, South Carolina**